IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| | § | |
| THE EXTRADITION OF | § | No. 4:24-MJ-656 |
| | § | |
| HUZEFA HAFIZ ISMAIL | § | |

**RESPONDENT ISMAIL'S BRIEF IN
OPPOSITION TO REQUEST FOR EXTRADITION**

Respondent Huzefa Hafiz Ismail files this brief in support of his argument that the court

decline to certify that there is sufficient evidence to sustain the charges under the treaty between

the Republic of France and the United States and release him from custody, and would show the

following.

1

**Table of Contents**

I.     Background…………………………………………………………… 1

II.    Request………………………………………………………………... 2

III.   Argument and Authorities……………………………………………….. 4

       a.    Legal Standard Related to Extradition……………………........ 4

       b.    French Request Does Not Support Extradition……………….….. 5

IV.    Conclusion…………………………………………………………. 15

**Table of Authorities**

United States-French Extradition Treaty………………………………………… 3

18 U.S.C. § 3184………………………………………………………………... 3, 4

18 U.S.C. § 3190……………………………………………………………. 5

*Garcia–Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971) cert. denied 405 U.S. 989 (1972)……………………………………………………………….. 5

*Illinois v. Gates*, 462 U.S. 213, 239 (1983))………………………………………... 12

*In re Extradition of Platko*, 213 F. Supp. 2d 1229, 1239 (S.D. Cal. 2002)…………. 13

*In re Extradition of Ben-Dak*, No. 06 Mag. 1540(GWG), 2008 WL 1307816, at *14 (S.D.N.Y. Apr. 11, 2008)……………………………………………………………. 14

*In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 693 (W.D. Tex. 2003)….. 5

*In re Extradition of Ramos Herrera*, 268 F. Supp. 2d at 696……………………….. 6

*In re Lehming*, 951 F. Supp. 505, 517 (D. Del. 1996)………………………………. 13

*Matter of Extradition of Netzky*, No. 3:20-MJ-00220, 2022 WL 2315976, at *13 (D. Or. June 28, 2022)……………………………………………………………………… 13

*United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1366 (S.D. Fla. 1999)….. 13

*United States v. Pena-Bencosme*, No. 05-M-1518 (SMG), 2006 WL 3290361, at \*2 (E.D.N.Y. Nov. 13, 2006)))……………………………………………………………………… 14

*United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985)…………………….. 12

*United States v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013)………………….. 13

I.  **BACKGROUND**

On August 25, 2024, Respondent Huzefa Hafiz Ismail ("Ismail")—a United States Citizen raised in Orange County, California—was charged in a Complaint brought under 18 U.S.C. § 3184 alleging that the Republic of France seeks the arrest, detention, and extradition of Ismail to France. *Complaint*, Dkt. 5.  Ismail was arrested the next day.  On August 27, 2024, Ismail made his initial appearance and was ordered detained pending a detention hearing.  Dkt. 9. On August 29, 2024, Ismail and the government agreed that Ismail would decline a detention hearing, but would reserve the right to request a hearing in the future. Dkt. 11.  The Court granted the motion.  Dkt. 12.  Ismail remains in custody for the past seven months.

The Complaint outlines a five-year investigation by French agents based on a review of the online encrypted messaging application known as "Sky ECC." The French set out excerpts of a series of messages allegedly occurring from June 20, 2020 through April 5, 2021, between a particular online user named CEO-DARKBANK with user #DOR3D and several other users, which the French contend evidences money laundering activity. *Complaint*, at 4-8.  The Complaint exclusively relies on these messages to support the extradition.  The Complaint is very sparse as to allegations that Ismail is actually this particular online user.  In fact, the only allegation in the nine-page Complaint relating to Ismail is capsulated in one sentence, that is, the French deduced Ismail's connection to the online user "through analysis of information sent by the account depicting Ismail's ex-partner, residence and flights, and the birth of his child." *Complaint*, at 8.   It is not even clear if the Complaint references Ismail's depictions, Ismail's residence, and the birth of Ismail's child or it references the ex-partner's depictions, the ex-partner's residence, or the birth Ismail's ex-partner's child.  In addition, the evidence presented in the Complaint is wholly inadequate to establish that France has complied with the terms of the

4

extradition treaty.  Thus, Ismail contends that the evidence in the Complaint is not sufficient to support extradition.

On October 29, 2024, the government informed the Court that, as required by the extradition treaty between France and United States, the Department of State received France's formal request for extradition and supporting documentation on October 22, 2024, the 60th and final day.  Dkt. 17; *See* United States-French Extradition Treaty.[1]  With the sparsity of evidence presented by the French in the extradition packet it is understandable why the French waited to the very last day to comply with the Treaty's express provisions.  Eventually, this French packet made its way to the Northern District of Texas. This packet is the exclusive evidence that the government presents to the Court in support of a finding to support Ismail's extradition to France.  A hearing is currently set for April 1, 2025.

## II. REQUEST

The Court should decline to certify that there is sufficient evidence to sustain the charges under the treaty between France and the United States.  The French have not complied with the terms of the Treaty to justify Ismail's extradition as a United States citizen to France. The French have not demonstrated that there is probable cause to believe that Ismail has committed the crimes in which he is charged.   Ismail further contends that it is a travesty for the United States Government to yield to Ismail's extradition to France on the basis of such insufficient evidence presented while the French *never* consent to the extradition of its citizens to the United States.[2]

---

[1] The Treaty provides that:  "A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the Requested State has not received the formal request for extradition and the supporting documents required by Article 10." Article 13, Paragraph 4. (April 23, 1996).

[2] France has a blanket prohibition against the extradition of its own nationals to the United States. This is why French nationals like movie director Roman Polanski never face justice in the United States.  This prohibition is enshrined in  French domestic law in article 696-4, 1° of the Code of Criminal Procedure. Moreover, in a ruling dated June 17, 2003, the *Cour de Cassation* (the French Supreme Court) ruled that the extradition of a French

III. **ARGUMENT AND AUTHORITIES**

    a. **Legal Standard Relating to Extradition**

International extradition proceedings are governed by 18 U.S.C. § 3184 and the terms of

the relevant treaty between the country where the fugitive is found and the country seeking

extradition. When a foreign government seeks extradition, the Court must conduct an

evidentiary hearing and determine whether the government has presented evidence "sufficient to

sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If

the Court finds Ismail extraditable, it must certify that finding to the Secretary of State, who will

make the ultimate surrender decision. *See* 18 U.S.C. §§ 3184, 3186.

> At the extradition hearing the Court should address the following issues:
>
> 1) personal and subject matter jurisdiction of the court, 2) existence of a
> controlling treaty, 3) confirmation of the fugitive's identity as the person sought
> by the requesting state, 4) verifiable charges against the fugitive, 5) commission
> of an extraditable crime, 6) satisfaction of the dual criminality requirement, 7)
> determination of probable cause that the fugitive committed the alleged crime, 8)
> presentation of applicable treaty defenses that would bar extradition of the
> fugitive.

*In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 693 (W.D. Tex. 2003). The

government has the burden to present evidence to support the extradition request, which is made

by a diplomatic document or packet from the requesting country that must be certified and

admitted properly at the hearing under 18 U.S.C. § 3190. *Id*. at 692. The government must

present evidence from the requesting country document to show there is probable cause that the

fugitive committed the crimes alleged.[3] *Id*. Probable cause is proven by "the existence of a

---

national is prohibited, even when the person concerned has expressly consented to it. Cass. crim., June 17, 2003, no.
03-81.864, Bull. crim., no. 123.

[3] As the government points out in its brief, the evidence in support of the extradition request is made *exclusively*
from the French diplomatic packet. See Gov't Memorandum in Support of Extradition, Dkt. 29, at 10.

reasonable ground to believe the accused guilty of the crime charged" and the requesting

country's presentation of 'competent evidence of a criminal violation is sufficient' to justify the

fugitive's detainment for trial by the requesting country." *Id*. at 696, citing *Garcia–Guillern v.*

*United States*, 450 F.2d 1189, 1192 (5th Cir. 1971) cert. denied 405 U.S. 989 (1972).

The Court must allow the respondent to offer evidence rebutting probable cause. *In re*

*Extradition of Ramos Herrera*, 268 F. Supp. 2d at 696 ("The accused may introduce evidence

which explains or negates the existence of probable cause, but evidence solely related to a

defense is properly excluded.").

### b. French Request Does Not Support Extradition

Ismail submits that France will not be able to establish all eight factors to support

certification by the Court at the hearing.  As to the issue of probable cause, the evidence

presented by France fails to establish probable cause.  As noted above, the Complaint makes a

barebones, conclusory attempt to establish that Ismail is user #DOR3D  or CEO Darkbank who

has left messages in the encrypting message application, known as Sky ECC.  France attempts to

link Ismail to this user through a review of selected chats, which are included in the submission

as excerpts.

The French extradition packet submission in support of extradition makes the same

insufficient attempt addressing at length evidence relating to chats supporting allegations of

some type of money laundering activity, but offer very little, if any, evidence to connect Ismail to

this activity.

For example, the French include a chat wherein user #DOR3D takes a picture from his

position in the driver's seat in an automobile looking forward from the windshield including a

partial shot of the front of the hood from the view of the driver and one photograph taken from

the viewpoint of the driver checking his cell phone.  The French then conclude user #DOR3D is,

in the French authority's own words, "possibly" driving a Mercedes Benz Brabus. *See id*. at 54-

58, 71.  The French make this speculation from a review of  three photographs in the excerpted

text:

> [F]rom "'CEO_' revealed that this user was using the same vehicle, ***possibly*** a
> MERCEDES G63 BRABUS, given the vehicle's visible characteristics (carbon
> hood attachment with air intake, red interior stitched with rhombuses).

*See id*. at 53 (emphasis added).  The problem with this assertion is answered by the French

themselves, while it is "possible" user #DOR3D is driving Mercedes Benz Brabus, it is not

probable.

The problem is compounded when the French claim that Ismail "could" drive this type of

vehicle:

> The analysis of SKY ECC messages from "3DOR3D" and ENCROCHAT
> messages from "CEO_" revealed the use by this user of a vehicle that ***could***
> correspond to a MERCEDES G63 (see above), while ***police cooperation*** revealed
> that Huzefa Hafiz ISMAIL was the owner of several luxury vehicles, including a
> MERCEDES GLS 63 and a MERCEDES G63.

*See id*. at 54 (emphasis added). "Could" certainly does not translate to "probable."  Moreover,

the vague statement referencing "police cooperation" that supposedly revealed that Huzefa Hafiz

Ismail was the actual owner of a Mercedes GLS 63 or Mercedes G63, is also too conclusory and

vague to support a probable cause finding.

First, there is no evidence that Ismail owns a Brabus, which is a particular Mercedes

Benz or Porche vehicle with aftermarket modification by Brabus.[4]  Even if Ismail owns a

Mercedes G63, there is no evidence he owns a Mercedes G63 with the Brabus aftermarket

---

[4] *See* Wikipedia, Brabus, https://en.wikipedia.org/wiki/Brabus, "Brabus GmbH (stylized in uppercase) is a German
high-performance automotive aftermarket tuning company founded in 1977 in Bottrop (Ruhr area). Brabus
specializes mainly in Mercedes-Benz, Maybach, and Smart vehicles," as of March 30, 2025.

8

package.  Second, referencing this information from "police cooperation" is too vague and ephemeral to be relied on or given weight by the Court. If the Court were reading a normal search warrant request where the federal agents allege the information came from mere "police cooperation" to establish a fact, the Court would unlikely give such a conclusory and vague statement weight.  Is police cooperation a paid informant? If so, how does the informant know this and how does the court weigh the informant's credibility.  Is it a law enforcement officer in France or Dubai providing the information?  How do this officer know this?  Is it a review of a police database?  If so, what type of database is it?  Out of the 168-page submission and through an investigation taking place from 2020 to the present, this is apparently the best the French can do.

There was no effort to even consult with the Motor Vehicle Division in Dubai, United Arab Emirates concerning what vehicles are actually registered to Ismail. This fact could have been easily done.  In fact, Ismail's counsel has obtained vehicles registered to Ismail.  Ismail owns a 2023 Lexus, a 2021 Dodge Ram Pickup truck, and a used 2014 Royce Royce.  There is no record of a Mercedes Benz G 63 with the specialty Brabus package.  *See* Exhibit A, attached to this Brief.  Under these circumstances, the French's attempt to link Ismail to user #DOR3D or CEO through an automobile fails.

The same problem exists relating to the allegation that Ismail has a Russian girlfriend or wife as the alleged user #DOR3D does.  In the packet, the French point to chats wherein user #DOR3D or CEO suggests he or she has a Russian wife.  *See id*. at 69.   The French later allege that:

> Intelligence gathered through *police cooperation* also revealed that Ismail
> HUZEFA had two girlfriends: one of Indian nationality with whom he would have
> one of Russian nationality.

*See id*. at 69 (emphasis added).  As noted above, intelligence gathered through police cooperation is too conclusory and vague to support a probable cause finding.  Who are the police? How do they know this? Is it based on information from confidential informants?  If so, how do we access the informants' credibility and whether they are in a position to make that statement? There is simply no ability for the Court to gauge or evaluate the credibility and reliability of this alleged police information.

The problem with the French submission is further compounded when the French attempt to link Ismail with nicknames given to user #DOR3D/CEO.  In this regard, the French cull out from the chats numerous references to 16 alleged nicknames that users have for user #DOR3D and CEO.  From these 16 nicknames, the French focus on five:  arnrk, CEO Huzaif,  Money Dxb, US MoneyMan, and Watchman." *See id*. at 70.  The French then state the following:

> Huzefa Hafiz Ismail's first name *may* explain the nickname 'CEO huzaif'. Huzefa Hafiz Ismail is a resident of Dubai (DXB being the airport code for Dubai, which *may* explain the nickname 'money Dxb') Huzefa Hafiz Ismail is an American citizen (which *may* explain the nicknames 'US Money Man' and 'amrk'); Huzefa Hafiz lsmail *is said to own* a company selling luxury watches under the name 'quintessential.ae' (which *may* explain the nickname 'WATCHMAN').

*See id*. at 70 (emphasis added).

The first problem with this averment is evident from the French's estimation of the probative value of this information. They explicitly use the word "may."  The problem with "may" is that it does not equate to "probable."  Moreover, the French suggest Ismail owns a watch company but the only evidence of this ownership comes from the vague phrase "is said to own."  Who said that? When did they say it?  Why did they say it?  How do they know that he owns it?  The French do not even suggest the information comes from police sources.  There is simply no ability for the Court to gauge or evaluate the credibility and reliability of this

10

information, especially when the French qualify the probative value of the information with the use of the word "may." It is pure speculation.

The French do cite Ismail's actual real estate business website: quintessential.ae but do not state what in the website references watches. By including the URL address in the packet, there is a suggestion for the reader to review this website. But, a review of this website does not even mention any watches for sale, it just demonstrates that Ismail has a real, viable real estate business, which he has been barred from attending to since his detention for the past seven months.

In addition, the French suggest that "CEO Huzaif" is actually a reference to Ismail's first name Huzefa. The French offer no evidence or explanation as to how they came up with that suggestion. In fact, Huzaif is a completely separate name in Arabic from the Indian/Arabic name Huzefa. Huzief is a name of Indian, Arabic origin. Huzief was a young man who was a notable companion of the Prophet Muhammad. *See* https://houseofzelena.com/blogs/baby-name/huzaif. The name means protector of others; one who guards. *Id*. Another source indicates that Huzeif means Handsome and Gift of God. *See* https://www.names.org/n/huzaif/about.

On the other hand, Huzefa is a completely different name. This name means seeker of knowledge and wisdom. It signifies one who educates others. *See* https://houseofzelena.com/blogs/baby-name/huzefa. Huzefa also means Pure Heart. *See* https://hamariweb.com/names/muslim/arabic/boy/huzefa-meaning_66454/ and https://houseofzelena.com/blogs/baby-name/huzaif. The attempt to equate the two names is like saying Fred is the same as Frank.

The French also suggest that "amrk" means American. However, they offer no support for the suggestion that amrk is internet slang for American. Importantly, the French do not even

11

attempt to make a connection with most of the other 11 nicknames of user #DOR3D. Some of

the nicknames clearly do not have a connection to Ismail. For example, "ceo_ Privatebank."

There is no suggestion Ismail has a bank account at a particular private bank. "H20" does not

suggest any connection to Ismail. There is clearly no association for the nicknames "hajl,"

"Kucho ind," "Mexicans," "shoku Luis transf," "timezone," "token CEO VIP," and

"zuckerberg." In fact, Mexicans suggest user #DOR3D is of Mexican origin. "Kucho ind"

suggests someone who owns an Indian restaurant serving kucho. Zuckerberg suggests someone

who owns a Facebook like platform. There is no evidence that Ismail has any such platform or

has any business connection with the SKY ECC platform.

 The nicknames USMoneyMan and MoneyDxb could fit Ismail as a possible match to

user #DOR3D since Ismail is U.S. Citizen and a resident of Dubai. But, there are 3,095,000

people who live in Dubai and 88.5% of the population are foreigners. *See*

https://www.macrotrends.net/global-metrics/cities/22635/dubai/population

The final effort to connect Ismail to user #DOR3D concerns one chat excerpt involving

one flight taking place over four years ago in 2021 from Dubai to Turkey. Apparently, there are

no other flights occurring in the four following years that bear on this issue. Nevertheless, the

French's effort to link Ismail to user #DOR3D also fails.

First, the French incorrectly state that; user #DOR3D "spent time in Turkey and had

flown from DUBAI.to ISTANBUL on February 14, 2021 returning on an ISTANBUL-DUBAI

flight on February 22, 2021." Dkt. 21-1, at 65. There is no explanation as to how they came up

with that information as it relates to user #DOR3D.

Second, the excerpted chats below this statement certainly do not support this claim. The

only reference to Turkey is a statement from another user who states: "babes deals done from

when you were gone to turkey, need the ones prior to you turkey trip." Dkt. 21-1, at 66.  The

reference is only to Turkey and not Istanbul, and it is not clear from the chats when the trip

occurred.  In fact, a reasonable inference can be drawn that person making that statement is

referring to a trip in the past.  The referenced statement above by the French is pure guessing and

speculation as to where in Turkey was the trip and when it occurred.  Turkey has 58 airports,

with 35 offering domestic and international flights and 23 providing regional flights.[5]

The French further try to show a connection to Ismail claiming he "traveled with a child

named Fatimah Ismail born on January 11 , 2021, who had traveled with Huzefa Hafiz TSMAIL

and Khadija Yakub ISMAIL on several occasions."  *Id*. at 67.   The French then point to chats

wherein user #DOR3D states on January 12, 2021, "Sorry been busy with Doctor Just had new

Iii one." *Id*.  According to the submission, Ismail's child was actually born the day before.  Not

that day.  In any event, the chat excerpted is not specific enough to demonstrate when and where

#DOR3D travelled to and from to make a inference meaningful.  It is telling that only one chat in

four years of the use of SKY ECC is pulled out to link Ismail to user #DOR3D.  This attempt to

link Ismail fails in that again it only suggests possibilities, not probabilities.

Ismail submits that the evidence submitted by France regarding one single flight, which

occurred over four years ago does not support a probable cause finding.  "[A] wholly conclusory

statement unsubstantiated by underlying facts is not sufficient to support a determination of

probable cause." *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) (citing *Illinois v.

Gates*, 462 U.S. 213, 239 (1983)).  It is no wonder the French tried to pack the submission with

---

[5] *See* Wikipedia, Lists of Airports in Turkey, at https://en.wikipedia.org/wiki/List_of_airports_in_Turkey, as of March 30, 2025.

other sketchy connections since they obviously knew this one flight so long ago even where they

have to inflate its relevance would not support a true probable cause finding.

The bottom line is that the French submission relies on conclusory statements and

statement mere possibilities instead of probabilities.  Such a submission is insufficient to

establish specific criminal conduct by Ismail to the offenses alleged against him. *See Matter of*

*Extradition of Netzky*, No. 3:20-MJ-00220, 2022 WL 2315976, at *13 (D. Or. June 28, 2022)

(denying a finding of probable cause in an extradition hearing when the affidavit contained

conclusory statements and speculative statements); *United States v. Underwood*, 725 F.3d 1076,

1084 (9th Cir. 2013) (conclusory statements are "afford[ed] little if any weight in the probable

cause analysis"); *In re Extradition of Platko*, 213 F. Supp. 2d 1229, 1239 (S.D. Cal. 2002)

("Even when an affidavit is provided, the showing must identify the facts and go beyond

conclusory characterizations."); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1366

(S.D. Fla. 1999) (rejecting extradition request where the affidavit in support contained "a variety

of conclusory and speculative statements") (simplified); *In re Lehming*, 951 F. Supp. 505, 517

(D. Del. 1996) (finding that "[c]onclusory statements do not satisfy the probable cause standard"

and finding no probable cause where the report relied upon by the government "does not provide

sufficient factual detail which allows this Court to conclude that probable cause exists"); *see also*

*In re Extradition of Ben-Dak*, No. 06 Mag. 1540(GWG), 2008 WL 1307816, at *14 (S.D.N.Y.

Apr. 11, 2008) ("In reviewing an extradition request, 'a court must conduct an independent

assessment of the evidence and closely examine the requesting country's submissions to ensure

that any hearsay bears sufficient indicia of reliability to establish probable cause.'" (quoting

*United States v. Pena-Bencosme*, No. 05-M-1518 (SMG), 2006 WL 3290361, at *2 (E.D.N.Y.

Nov. 13, 2006))).

The French have had plenty of time to shore up this insufficient submission with additional details.  If Ismail were user #DOR3D, a major European money launderer who he is made out to be, this should be easy for the French to do so with their vast resources instead of relying on the paltry evidence submitted.

In fact, the government was put on notice by the undersigned counsel months ago that the French attempt to link Ismail with user#DOR3D was very tenuous at best. Under these circumstances, the only logical inference to be drawn from the five-year French investigation is that sufficient evidence is not forthcoming. As the government notes in its brief in support of extradition, the French can later re-submit a request for extradition.  But, until that time, the Court should decline to make the certification as requested by the government.

## IV. CONCLUSION

The evidence the French have produced does not establish probable cause. As a United States citizen, Ismail should not be extradited based on supposition and innuendo.  The French Government has not complied with the terms of the treaty, and the Court should not make the certification as requested by the government.  Ismail should be discharged from custody.

Respectfully submitted,

/s/ Richard B. Roper
RICHARD B. ROPER
Texas Bar Card No. 17233700
richard.roper@hklaw.com

Javan Porter
Texas Bar Card No. 24116912
javan.porter@hklaw.com

HOLLAND & KNIGHT
One Arts Plaza, 1722 Routh Street
Suite 1500
Dallas, Texas  75201

15

214-969-1700
214-969-1751 fax

*/s/  Jay  B.  Stewart*
Kent Hance
Texas Bar Card No. 19211125
khance@hslawmail.com

HANCE SCARBOROUGH LLP
203 W. 10th Street Suite 600
Austin, Texas 78701
(512) 479-8888
Fax (512) 482-6891

**COUNSEL FOR RESPONDENT HUZEFA HAFIZ ISMAIL**

## CERTIFICATE OF SERVICE

I certify that a copy of this motion will be electronically served, upon filing, to the

Assistant United States Attorney through the ECF system.

*/s/ Richard B. Roper*
RICHARD B. ROPER

16

# EXHIBIT A



رخصة سير مركبة

## Vehicle License

هذه شهادة الكترونية معتمدة من هيئة الطرق والمواصلات في دبي ولا تحتاج
إلى ختم أو توقيع،

This is an electronic certificate approved by the Dubai RTA and
does not require a stamp or signature.

8009090    rta.ae

## Vehicle license                                                                 رخصة سير مركبة

| | | | |
|---|---|---|---|
| **Traffic plate No. :** | T 22883 | | رقم اللوحة: |
| **Place of issue:** | Dubai | دبي | جهة الترخيص: |
| **Plate class:** | Private | خصوصي | صنف اللوحة: |
| **Traffic Code No. :** | 12032899 | | الرمز المروري: |
| **Owner:** | حذيفه حافظ اسماعيل | | المالك: |
| | HUZEFA HAFIZ ISMAIL | | |

| | | | | |
|---|---|---|---|---|
| **Insurance Expiry:** | 04/09/2025 | تاريخ انتهاء التأمين: | **Nationality:** United States | الولايات المتحدة | الجنسية: |

| | | | | | |
|---|---|---|---|---|---|
| **Insurance Expiry:** | 04/09/2025 | تاريخ انتهاء التأمين: | **Nationality:** United States الولايات المتحدة | الجنسية: |
| **Policy No. :** | 62243298988 | رقم الوثيقة: | **Registration Date:** 25/05/2022 | تاريخ الترخيص: |
| **Insurance Type:** Third Party | ضد الغير | نوع التأمين: | **Expiry Date:** 04/08/2025 | انتهاء الترخيص: |
| **Mortgaged by:** | | جهة الرهن: | **Insurance Co.:** FUJAIRAH NATIONAL INSURANCE CO. (DUBAI BRANCH) شركة الفجيرة الوطنية للتأمين (فرع دبي) | شركة التأمين: |

## Vehicle information                                                             بيانات المركبة

| | | | |
|---|---|---|---|
| **No. of passengers:** | 5 | | عدد الركاب: |
| **Year model:** | 2021 | | سنة الصنع: |
| **Origin:** | United States | الولايات المتحدة | بلد الصنع: |
| **Vehicle color:** | Gray Black | رمادي اسود | لون المركبة: |
| **Vehicle class:** | PICK-UP | بيك اب | صنف المركبة: |
| **Vehicle type:** | DODGE RAM | DODGE RAM | نوع المركبة: |
| **Empty weight:** | 2320 | | الوزن فارغة: |
| **Gross vehicle weight:** | 3000 | | الوزن الإجمالي: |
| **Engine No. :** | nil | | رقم المحرك: |



رخصة سير مركبة

## Vehicle License

هذه شهادة الكترونية معتمدة من هيئة الطرق والمواصلات في دبي ولا تحتاج
إلى ختم أو توقيع،

This is an electronic certificate approved by the Dubai RTA and
does not require a stamp or signature.

8009090     rta.ae

**GOVERNMENT OF DUBAI**
حكومــة دبـــي

**Vehicle license**     رخصة سير مركبة

| | | | |
|---|---|---|---|
| **Traffic plate No. :** | F 11778 | رقم اللوحة: |
| **Place of issue:** | Dubai | دبي | جهة الترخيص: |
| **Plate class:** | Private | خصوصي | صنف اللوحة: |
| **Traffic Code No. :** | 12032899 | الرمز المروري: |
| **Owner:** | حذيفه حافظ اسماعيل | المالك: |
| | HUZEFA HAFIZ ISMAIL | |

| | | | | | |
|---|---|---|---|---|---|
| **Insurance Expiry:** | 02/10/2025 | تاريخ انتهاء التأمين: | **Nationality:** | United States | الولايات المتحدة | الجنسية: |
| **Policy No. :** | 06TP748525 | رقم الوثيقة: | **Registration Date:** | 23/02/2014 | تاريخ الترخيص: |
| **Insurance Type:** | Third Party | ضد الغير : نوع التأمين | **Expiry Date:** | 02/09/2025 | انتهاء الترخيص: |
| **Mortgaged by:** | | جهة الرهن: | **Insurance Co.:** | SUKOON TAKAFUL P.J.S.C. سكون تكافل (مساهمة عامة) | شركة التأمين: |

## Vehicle information
بيانات المركبة

| | | |
|---|---|---|
| **No. of passengers:** | 4 | عدد الركاب: |
| **Year model:** | 2014 | سنة الصنع: |
| **Origin:** | Great Britain | بريطانيا | بلد الصنع: |
| **Vehicle color:** | Brown Golden | بني ذهبي | لون المركبة: |
| **Vehicle class:** | Coupe | كوبيه | صنف المركبة: |
| **Vehicle type:** | ROLLS ROYCE WRAITH | ROLLS ROYCE WRAITH | نوع المركبة: |
| **Empty weight:** | 2000 | الوزن فارغة: |
| **Gross vehicle weight:** | 2500 | الوزن الإجمالي: |
| **Engine No. :** | 90470725 | رقم المحرك: |



رخصة سير مركبة

# Vehicle License

هذه الشهادة الكترونية معتمدة من هيئة الطرق والمواصلات في دبي ولا تحتاج
إلى ختم أو توقيع،

This is an electronic certificate approved by the Dubai RTA and
does not require a stamp or signature.

8009090     rta.ae

حكومــة دبـــي
GOVERNMENT OF DUBAI

**Vehicle license**

رخصة سير مركبة

| | | | |
|---|---|---|---|
| **Traffic plate No. :** | K 92962 | رقم اللوحة: | |
| **Place of issue:** | Dubai | دبي | جهة الترخيص: |
| **Plate class:** | Private | خصوصي | صنف اللوحة: |
| **Traffic Code No. :** | 12032899 | الرمز المروري: | |
| **Owner:** | حذيفه حافظ اسماعيل | المالك: | |
| | HUZEFA HAFIZ ISMAIL | | |

| | | | |
|---|---|---|---|
| **Insurance Expiry:** | 29/08/2025 | تاريخ انتهاء التأمين: | |
| **Policy No. :** | DF479271 | رقم الوثيقة: | |
| **Insurance Type:** | Third Party | ضد الغير نوع التأمين: | |
| **Mortgaged by:** | | جهة الرهن: | |

| | | | |
|---|---|---|---|
| **Nationality:** | United States | الولايات المتحدة | الجنسية: |
| **Registration Date:** | 04/05/2023 | تاريخ الترخيص: | |
| **Expiry Date:** | 29/07/2025 | انتهاء الترخيص: | |
| **Insurance Co.:** | AL DHAFRA INSURANCE CO.(PUBLIC SHAREHOLDING CO.) | شركة الظفرة للتأمين (شركة مساهمة عامة) فرع دبي | شركة التأمين: |

## Vehicle information

بيانات المركبة

| | | |
|---|---|---|
| **No. of passengers:** | 5 | عدد الركاب: |
| **Year model:** | 2023 | سنة الصنع: |
| **Origin:** | Japan | اليابان | بلد الصنع: |
| **Vehicle color:** | White Pearl | ابيض لؤلؤي | لون المركبة: |
| **Vehicle class:** | SALOON | صالون. | صنف المركبة: |
| **Vehicle type:** | LEXUS ES 300H | LEXUS ES 300H | نوع المركبة: |
| **Empty weight:** | 1800 | الوزن فارغة: |
| **Gross vehicle weight:** | 2300 | الوزن الإجمالي: |
| **Engine No. :** | A25A3A52307 | رقم المحرك: |