IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| THE EXTRADITION OF | § | NO. 4:24-MJ-656-BP |
| HUZEFA HAFIZ ISMAIL | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed on August 25, 2024, in which the United States seeks the extradition of Huzefa Hafiz Ismail ("Ismail") to France. ECF No. 5. The Court held a hearing on April 1, 2025, on the extradition request. After considering the Complaint, exhibits admitted in evidence at the hearing, briefs of the parties, and arguments of counsel, the Court **CERTIFIES** that Hafiz Ismail is extraditable to France.

**I.   BACKGROUND**

**A.   Allegations against Ismail in France**

In the Complaint, France alleges that Ismail engaged in money laundering activities in 2020 and 2021 involving millions of dollars of illegal proceeds of drug transactions and other unlawful activities. *Id.* at 3-8. Based on their forensic examination of the messaging application SkyECC, French authorities concluded that Ismail was involved in numerous drug transactions and illegal financial dealings in violation of French law. *Id.* They base this conclusion on their examination of SkyECC and other information "depicting Ismail's ex-partner, residence, flights, and the birth of his child." *Id.* at 8. France seeks to extradite Ismail to prosecute him for money laundering, in violation of Article 222-38 of the French Criminal Code ("FCC"), serious money laundering, in violation of Article 324-2 of the FCC, and conspiracy in violation of Article 450-1 of the FCC. ECF No. 6.

### B.     Extradition proceedings in the United States

The United States began these proceedings by filing a Complaint under seal on August 25, 2024. ECF No. 1. The United States filed a Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings on August 26, 2024. ECF No. 6. The Court conducted a hearing on August 27, 2024, and ordered that Ismail be detained pending a hearing set on September 3, 2024. ECF Nos. 9, 10. Ismail moved to cancel the September 3 hearing, the Court did so, and the Court ordered the parties to submit a joint status report on or before October 15, 2024. ECF Nos. 11, 12.

The parties filed their joint status report on October 15, 2024. ECF No. 14. Ismail moved to be discharged from custody, and the Court denied his request. ECF Nos. 14, 15, 22. Ismail filed a second motion to discharge or, alternatively, to set conditions of release. ECF No. 19. The United States filed a Notice of Receipt of Extradition Package on December 23, 2024, and filed a Notice Regarding Filing of Extradition Package on January 16, 2025. ECF Nos. 26, 27. The Court set an extradition hearing on February 11, 2025, at 9:00 a.m. ECF No. 28. Ismail filed a joint status report on February 7, 2025, requesting that the hearing be reset to on or about March 26, 2025. ECF No. 31. The United States did not oppose his request. *Id.* The Court reset the hearing for April 1, 2025. ECF No. 32.

On April 1, 2025, the Court held the extradition hearing. ECF No. 35. Ismail appeared at the hearing with his counsel, Richard Roper and Javan Porter, and Assistant United States Attorney Matthew Weybrecht appeared on behalf of the United States. The Court admitted exhibits, which included airplane flight information for flights between Dubai and Istanbul and Ankara, Turkey (Defendant's Exhibits B and C), the Extradition Package (Government Exhibit 1), and a supplement to the package (Government Exhibit 2). The Court heard counsel's legal and factual arguments.

The Declaration of Stacy Hauf ("Hauf Declaration"), an Attorney Adviser in the Office of the Legal Adviser for the Department of State, supports the extradition package. ECF No. 27-1 at 2-3. The Hauf Declaration establishes many of the legal requirements for extradition and authenticates the documents contained in the package. *Id.* The extradition package contains the following documents, all of which the Court considered:

1. Note from the French Embassy in Washington, D.C. requesting Ismail's extradition;

2. The extradition treaty between the United States and France ("the Treaty"); and

3. Note from the Cour D'Appel de Paris requesting Ismail's extradition and attaching documents bearing the seal of the French tribunal, including investigative materials, the French arrest warrant, and description of charges.

The United States later filed the "Instrument" referred to in the Hauf Declaration that contained amendments to the Treaty. ECF No. 33. The Court considered this Supplemental Filing.

## II. ANALYSIS

In response to an extradition complaint, the Court conducts a limited inquiry. *See* 18 U.S.C. §§ 3181-95 (2025). To certify the extradition, the Court must make the following findings: (1) the judge is authorized to conduct the proceeding; (2) the Court has jurisdiction over the subject of the extradition; (3) a valid extradition treaty is in force between the United States and the country requesting extradition; (4) the offense charged against the person at issue is extraditable under the extradition treaty and the law of the United States; and (5) there is a reasonable basis for finding probable cause that the person at issue committed the offenses that are the subject of the extradition complaint. *See* 18 U.S.C. § 3184; *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1402 (9th Cir. 1988).

Under the rule of non-inquiry for cases involving requests for extradition to a foreign country, the Court must "refrain from investigating the fairness of a requesting nation's justice

system, and from inquiring into the procedures or treatment which awaits a surrendered fugitive in the requesting country." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) (quotation marks omitted). The rule recognizes that "courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems." *In re Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995). "It is not that questions about what awaits the [subject of the extradition] in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Kin-Hong*, 110 F.3d at 111.

    **A.**    **The undersigned can conduct the extradition proceeding.**

Under the United States Code, a magistrate judge whom a United States court authorizes may conduct an extradition hearing and certify the extradition. 18 U.S.C. § 3184. The Northern District of Texas authorizes magistrate judges to "perform all duties that may be performed by a United States magistrate judge under law." Miscellaneous Order No. 6. Thus, the law authorizes the undersigned to conduct the extradition hearing and certify the extradition. The parties do not dispute this conclusion.

    **B.**    **The Court has jurisdiction over Ismail.**

The Court has jurisdiction to extradite "any person found within [its] jurisdiction." 18 U.S.C. § 3184. There is no dispute that law enforcement authorities found Ismail at the Dallas-Fort Worth International Airport, which is in this district.

    **C.**    **A valid extradition treaty exists between the United States and France.**

The United States and France are parties to a valid extradition treaty. ECF Nos. 27-1 at 8-44, 33-1 at 1-7. This finding is undisputed.

### D.  The offenses charged are extraditable under the Treaty.

The Treaty provides that "[a]cts shall be extraditable if they are punished under the laws in both States by deprivation of liberty for a maximum of at least one year or my a more severe penalty." Treaty, art. 2 ¶ 1. The Treaty further provides that "[a]n offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of, an offense described in paragraph 1." *Id.* at ¶ 2. The evidence and applicable legal authorities show that the Treaty covers the offenses for which France requests extradition.

The Hauf Declaration establishes that "[t]he offenses relating to money laundering and criminal conspiracy for which extradition is sought are covered under Article 2 of the [Treaty]." *Id.* at ¶ 2. The Court gives deference to the State Department's finding that the Treaty covers the offenses for which France seeks to extradite Ismail. *Factor v. Laubenheimer*, 290 U.S. 276, 295 (1933). "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982).

The French criminal offenses at issue here involve potential prison sentences of more than one year. The extradition package evidences that France punishes the offenses of money laundering and serious money laundering with a prison term ranging from ten to thirty years and the offense of criminal conspiracy with a term of imprisonment of five years or ten years. ECF No. 27-1 at 90-102. Under the United States Code, these offenses likewise could yield prison sentences of more than one year. *See* 18 U.S.C. §§ 1956 (money laundering), 1957 (money laundering involving certain activity). The extradition package also establishes that the French statute of limitations has not expired on the criminal charges at issue. ECF No. 27-1 at 75.

The alleged offenses are punishable by terms of imprisonment exceeding one year in France and under federal law in the United States. Thus, the offenses charged are extraditable under the Treaty, and there is no dispute on this point.

### E. The Court finds probable cause that Ismail committed the offenses for which France requests his extradition.

To certify extradition under the applicable extradition statute, the Court must find "evidence sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. The evidence must meet the same basic requirement for probable cause that the Court employs in a preliminary hearing. "Hearings held pursuant to Section 3184 are in the nature of a preliminary hearing….The foreign country does not have to show actual guilt, only probable cause that the fugitive is guilty." *Gusikoff v. United States*, 620 F.2d 459, 462 (5th Cir. 1980) (citations omitted).

The Treaty requires that a request for extradition to France include "such information as would justify the committal for trial of the person if the offense had been committed in the United States." Treaty, art. 10, ¶ 3(b). The Court construes this provision as requiring only that it find probable cause to believe that Ismail committed the offenses for which France seeks his extradition. "In reviewing a request for surrender, the committing court must determine whether probable cause exists to sustain the charges against the accused." *Ntakirutimana v. Reno*, 184 F.3d 419, 427 (5th Cir. 1999) (citing *Collins v. Loisel*, 259 U.S. 309, 314-15 (1922)).

France's case against Ismail primarily rests on recovered encrypted messages from SkyECC, a messaging application that France alleges was used exclusively to facilitate organized criminal activities. ECF No. 27-1 at 52. French authorities identified a person who used various pseudonyms, including CEO / DARKBANK, in transactions in which he

6

laundered monies obtained from illegal drug trafficking. *Id.* at 53. The total sum of the transactions amounted to hundreds of millions of Euros. *Id.* at 54. The individual revealed that he was in Dubai. *Id.* Authorities believe that he used a vehicle identified as a Mercedes G63 Brabus. *Id.*

Further analysis of the CEO / DARKBANK conversations revealed money "pick-ups" that occurred in person in Paris in November and December 2020. *Id.* at 56. Other transactions occurred using online cryptocurrency accounts. *Id.* at 57. French officials claim that CEO / DARKBANK was a broker or intermediary who facilitated these transactions. *Id.* at 64.

French officials assert that Ismail is the person identified as CEO / DARKBANK. *Id.* at 72. In support of this conclusion, the French authorities describe in detail various transactions, messages, and other communications between CEO / DARKBANK, other persons, and other identified correspondents using numerous SKY PINS. *Id.* at 66. The officials point to references to travel between Dubai and Istanbul, Turkey on February 14 and 22, 2021 that CEO / DARKBANK communicated to others and to flights on or about those dates that Ismail took on Fly Emirates. *Id.* at 67. They also highlighted references CEO / DARKBANK made to the recent birth of a child in early 2021, which coincided with the birth of Ismail's child in the same period. *Id.* at 67-69. They note references to a Russian wife or ex-wife, which corresponded to information provided through police cooperation that showed that Ismail had an Indian girlfriend and another girlfriend who was of Russian nationality. *Id.* at 70. Police cooperation also confirmed that Ismail owned a Mercedes G63 and a GLS 63, which could correspond to a Mercedes G63 mentioned in messages that CEO / DARKBANK sent and to photographs of a Mercedes G63 Brabus mentioned previously. *Id.* at 71.

Finally, French officials listed several nicknames that others used for CEO / DARKBANK, which the authorities believe are based on Ismail's name or variations of his

name. These include "CEO huzaif" that may be linked to Ismail's first name, Huzefa. *Id.* at 71. They assert that "Money DXB" may refer to Ismail's place of residence in Dubai, which has the DXB airport code. *Id.* They also assert that "US Money Man" and "amrk" may refer to Ismail's American citizenship. And they assert that the nickname "WATCHMAN" may be linked to Ismail's business of selling luxury watches through a website entitled "quintessential.ae." *Id.* French officials concluded that "[t]he result of cross-referencing this intelligence was that CEO / DARKBANK" was Ismail. *Id.* at 72.

Ismail's counsel disputes that there is probable cause to believe that criminal offenses have occurred as France alleges or that Ismail committed those offenses. He argues that the evidence is highly circumstantial, based on the evidence of witnesses whose credibility has not been established, on police cooperation that does not identify the law enforcement agencies involved, and on a series of discrete "possibilities" that do not add up to probable cause. Ismail offered evidence of the numerous flights between Dubai and Istanbul and Ankara, Turkey, arguing that CEO /DARKBANK could have been on any of those flights and the many others connecting Dubai and other airports in Turkey. He asserts that the evidence regarding the Mercedes G63 Brabus is extremely thin, and he offered evidence that such a vehicle is not currently registered to Ismail in Dubai and argues that the French government did not offer evidence to show registration of such a vehicle in Ismail's name during the relevant period. He introduced Ismail's wife, mother, and grandmother at the hearing and stated that none of them were of Russian nationality. Ismail, then, argues that the evidence of nicknames that possibly were linked to him is not credible or relevant. In sum, Ismail asserts that the pieces of evidence offered by France, when viewed together, do not support even the inference of likeness between CEO / DARKBANK and Ismail.

Although the Court carefully considered the evidence Ismail offered at the hearing and his criticisms of the form and content of the extradition package, the Court's role in an extradition proceeding is not to weigh the evidence and enter a finding on Ismail's guilt or innocence on the charges at issue. *Collins*, 259 U.S. at 314-15. The Court's function is to determine whether there is probable cause based on all the evidence to believe that Ismail committed the offenses with which France has charged him. Probable cause is the "existence of reasonable grounds to believe the accused committed the offense charged." *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971). The evidence assembled by the French authorities and offered by the United States establishes reasonable grounds for the Court to believe that criminal offenses have occurred as alleged in the extradition package and that Ismail committed those offenses. Based on a full review of the evidence received at the extradition hearing, the arguments of counsel in their briefs and at the hearing, and the applicable legal authorities, the Court concludes that France has established probable cause to believe that Ismail committed the money laundering offenses and criminal conspiracy as stated in the extradition package.

### III.  CONCLUSION

The Court certifies the extradition of Huzefa Hafez Ismail to France on the charges of money laundering, serious money laundering, and criminal conspiracy. The United States Attorney's Office **SHALL FORWARD** a copy of this Memorandum Opinion and Order, together with a copy of all evidence admitted and testimony taken at the extradition hearing on April 1, 2025, to the Secretary of State. The Court **COMMITS** Huzefa Hafez Ismail to the custody of the United States Marshal pending a decision on extradition by the Secretary of State pursuant to 18 U.S.C. § 3186.

It is so **ORDERED** on April 8, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE